UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LISA L. SHAMBAUGH,

       Plaintiff,

       v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

       Defendant.

Civil No. 05-163-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

    Plaintiff Lisa L. Shambaugh brings this action for judicial review of a final decision from

defendant Commissioner denying plaintiff's application for Social Security disability insurance

benefits ("DIB") and Supplemental Security Income ("SSI") payments.  Plaintiff filed an

application for DIB in December 2001 and an application for SSI in May 2002.  Those

applications were denied and plaintiff requested a hearing before an Administrative Law Judge

1  - OPINION AND ORDER

(ALJ).  After this hearing the ALJ issued a ruling on August 26, 2003, concluding that plaintiff

was not entitled to DIB or SSI.  This decision became the Commissioner's final decision upon

the Appeals Council's denial of review.  *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.  Plaintiff

subsequently filed this Complaint.

## LEGAL STANDARDS

A person may be considered eligible for DIB or SSI if he or she has insured status under

the Act and suffers from a physical or mental disability.  42 U.S.C. § 423(a)(1).  A claimant is

construed as disabled for purposes of the Act if he or she is unable to engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment that can

be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A).  A person can be disabled for these purposes only if his or her

impairment is of such severity that the person is not only unable to perform previous work but

cannot, considering the person's age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for benefits because of disability.  20 C.F.R. §§ 404.1520,

416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (DIB); *Quang Van Han v.

Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI).

First, the Commissioner determines whether the claimant is engaged in "substantial

gainful activity."  If the claimant is so engaged, disability benefits are denied.  If not, the

Commissioner proceeds to step two and determines whether the claimant has a medical

impairment that meets the regulatory definition of "severe."  20 C.F.R. § 404.1520(a).  If the claimant lacks this kind of impairment, disability benefits are denied.  20 C.F.R. § 404.1520(c).

If the claimant's impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe they are presumed to preclude substantial gainful activity.  20 C.F.R. § 404.1520(d).  These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").  If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past.  If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.   The claimant is entitled to disability benefits if he or she is not able to perform any other work.  20 C.F.R. § 404.1520(f).

The claimant bears the initial burden of establishing his or her disability.  In the five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four.  In step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual

functional capacity (RFC), age, education and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). If the Commissioner cannot meet this burden, the claimant is considered disabled for the purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1).

The Commissioner has an affirmative duty to develop the record. 20 C.F.R. § 404.1512(d); *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The proceedings are not adversarial and the Commissioner shares the burden of proof at all stages. *Id.*; *Tackett*, 180 F.3d at 1098 n.3.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097. Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

## FACTS

The relevant background has been presented thoroughly by the parties and in the ALJ's decision, and will be merely summarized here.  Plaintiff was forty-one years old at the time of the hearing decision.  Plaintiff obtained a modified high school diploma through special education.  Her past employment experience includes work as a housekeeper and a food service worker.  She has worked part-time but at levels that fall short of being considered substantial gainful activity.

She alleges a disability onset date of October 18, 2000, due to bipolar disorder.  Prior to that date she was treated for episodic acute abdominal pain and depression.  Plaintiff reported a history of prescription drug abuse during early 2000.  Prior to losing her job in October 2000 plaintiff suffered from symptoms of depression, including lack of sleep, diminished appetite, and crying spells.

Plaintiff was hospitalized in late November 2000 for depression, anxiety and suicidal thoughts.  She was diagnosed with bipolar disorder, marijuana dependence and a past history of alcohol abuse was noted.

In early 2001 plaintiff was treated for addiction to Ativan.  She twice received emergency room treatment in March 2001 for acute depression and for complications (speech difficulty) from a reaction to prescription drugs.  Subsequent mental health evaluations in 2001 indicated that plaintiff continued to suffer from depression, suicidal ideation, and prescription drug and alcohol abuse.

Plaintiff relocated to Portland, Oregon, in September 2001.  She continued to suffer from depression, mood swings and suicide ideation, and also failed in several employment efforts.

5   - OPINION AND ORDER

She sought and received psychiatric treatment, and was diagnosed with a "moderate level of impairment in the area of sustained concentration and pace." Evaluation of Doctor James B. Powell, Psy.D., at Transcript of Record p. 354 (hereinafter indicated as "Tr."). Doctor Powell opined in June 2002 that the prognosis for plaintiff's ability to maintain employment in the future was good, but that if "psychological symptoms are determined to have significantly interfered with [plaintiff's next employment effort], Ms. Shambaugh may need an additional 12 months to attain the necessary level of psychological stability to maintain employment in the future." Tr. 355.

An evaluation performed by other therapists in November 2002 concluded, however, that plaintiff would be unable to sustain employment for at least one year due to her acute depression. Tr. 482.

More specific medical facts and background will be addressed as necessary in conjunction with the parties' legal arguments.

The ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that plaintiff suffered from an impairment or combination of impairments considered severe in Agency regulations. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the requirements of a listed impairment.

Pursuant to step four, the ALJ found that plaintiff could not perform past relevant work. The ALJ next found that plaintiff retained an RFC to perform "simple, 1-2-3 step, routine work with no public interaction and limited co-worker interaction" with no exertional limitations. Tr. 23. The ALJ concluded that plaintiff could "make a vocational adjustment to work that exists in

significant numbers in the national economy" including jobs as janitor, laundry worker or mail

sorter.  Tr. 24.  Accordingly, the ALJ concluded that she did not qualify for DIB.  *Id.*

## QUESTION PRESENTED

Plaintiff contends that this court should reverse and remand the Commissioner's final

decision for further findings or for payment of benefits primarily because the ALJ improperly

rejected plaintiff's testimony.  Although plaintiff asserted initially that the ALJ also improperly

rejected the expert opinions of plaintiff's treating doctors as well as lay testimony, and also

complained that the ALJ's hypothetical question posed to the Vocational Expert was incomplete,

these arguments were abandoned in plaintiff's final Reply brief after the Commissioner

addressed them in its Response.  This court has examined each of these arguments

independently, and conclude that they are without merit.  The questions as to the determination

of plaintiff's credibility and regarding the ALJ's evaluations of medical opinions require further

discussion.

## DISCUSSION

In concluding that plaintiff is not entitled to DIB, the ALJ rejected plaintiff's testimony

and allegations regarding her impairments and the resulting limitations.  If an ALJ finds that a

claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility

determination citing the reasons why that testimony is unpersuasive.  *See Bunnell v. Sullivan*,

947 F.2d 341, 345 (9th Cir. 1991).  The ALJ must identify specifically what testimony is

credible and what testimony undermines the claimant's complaints.  *See Lester v. Chater*, 81

F.3d 821, 834 (9th Cir. 1995) (citation omitted); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

1993).

7   - OPINION AND ORDER

In evaluating a claimant's claim of subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged.  20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citation and quotation omitted).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*) to assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony.  If the claimant produces evidence that meets the *Cotton* test, and there is no evidence of malingering, then the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear and convincing reasons for doing so.  *See Dodrill*, 12 F.3d at 918.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms must meet two tests.  First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'"  *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *see also Cotton*, 799 F.2d at 1407.

Second, he or she must show that the impairment or combination of impairments could reasonably be expected to (not necessarily that it did) produce some degree of symptom; that is, the claimant need not produce objective medical evidence of the *symptom*, or the severity thereof.  *Smolen*, 80 F.3d at 1282 (emphasis added) (citing *Bunnell*, 947 F.2d at 347-48).

> Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal

8  - OPINION AND ORDER

> relationship be a reasonable inference, not a medically proven phenomenon.
> Finally, the claimant need not show that her impairment could reasonably be
> expected to cause the severity of the symptom she has alleged; she need only
> show that it could reasonably have caused some degree of the symptom. This
> approach reflects the highly subjective and idiosyncratic nature of pain and other
> such symptoms. . . . Thus, the ALJ may not reject subjective symptom testimony
> under the *Cotton* analysis simply because there is no showing that the impairment
> can reasonably produce the *degree* of symptom alleged (emphasis in original).

*Smolen*, 80 F.3d at 1282 (citations and quotations omitted).

In addition to medical evidence, factors relevant to the ALJ's credibility determination
include:  a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her
symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects
of any medication; treatment, other than medication; measures used to relieve symptoms; and
functional limitations caused by the symptoms.  *Id.* at 1284; 20 C.F.R. § 404.1529(c)(3).

"The ALJ must state specifically which symptom testimony is not credible and what facts
in the record lead to that conclusion."  *Smolen*, 80 F.3d at 1284.  In determining that subjective
testimony is not credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for
> lying, prior inconsistent statements concerning the symptoms, and other testimony by the
> claimant that appears less than candid; (2) unexplained or inadequately explained failure
> to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's
> daily activities.

*Id.*  (citations omitted).

In sum, if the plaintiff has met the burden of showing that his or her impairment or
combination of impairments *could reasonably be expected to* (not that it did in fact) produce
some degree of the symptoms plaintiff's testimony describes, and there is no evidence suggesting
that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of

plaintiff's symptoms unless there are clear and convincing reasons for doing so. *Id*. at 1283; *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

In this case, plaintiff produced some objective medical evidence of her underlying impairments and the record contains no evidence of malingering. Accordingly, the ALJ was required to make specific findings stating clear and convincing reasons for rejecting plaintiff's symptom testimony. This court concludes that the ALJ did so.

These reasons include plaintiff's inconsistent reports about her use of drugs and alcohol, including use directly following her completion of a drug rehabilitation program, and evidence establishing that plaintiff exaggerated descriptions of her symptoms in efforts to obtain prescriptions for drugs. Tr. 20. Such evidence is a legitimate consideration in determining credibility. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Similar, additional evidence pertaining to plaintiff's credibility noted by the ALJ reflected that in August 2001, plaintiff's sister-in-law reported that her son reported that plaintiff was "fine" prior to calling her doctor to complain of anxiety. Tr. 18, 427.

Moreover, an additional factor that an ALJ may consider when making a credibility determination is the existence of medical evidence tending to discount the severity of a plaintiff's subjective claims. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). In this case, the ALJ made reference to considering medical opinions about the nature and severity of plaintiff's impairments. Tr. 21. Some of this medical evidence suggested that plaintiff misrepresented her complaints in hopes of obtaining medications. "Progress Notes" recorded on February 5, 2001 reveal that plaintiff called repeatedly that day with complaints of anxiety and

mood swings, but resisted requests that she be examined – the physician opined that plaintiff's

motivation "was clear – she is attempting to get more meds from me." Tr. 17, 279.

These factors considered by the ALJ in determining plaintiff's credibility – evidence of

inconsistency and contradiction in the record, evidence of exaggeration, and relevant medical

evidence  – are all clear and convincing reasons that support the ALJ's evaluation of plaintiff's

testimony.  Plaintiff's objections that some of these factors were "taken out of chronology [sic]

and context" is unavailing.  Pl.'s Reply Brief at 2.  The timing and context pertaining to these

reasons vary, of course, but such variance fails to eliminate the reasons as useful insights and

factors to be considered in the difficult process of evaluating plaintiff's credibility.  Plaintiff's

argument amounts to proposing that the credibility of a claimant who has a drug abuse history

can be determined fairly by selectively considering credibility factors during the claimant's lucid

or "clean" periods.  There is no support for this in the applicable legal authorities.  The ALJ's

finding that plaintiff's testimony regarding her subjective symptoms and limitations was not

worthy of complete acceptance is valid and, therefore, affirmed.

Plaintiff's second challenge questions whether the ALJ was correct in evaluating the

opinions of medical personnel who treated or consulted with plaintiff.  Specifically, plaintiff

complains that the ALJ failed to defer to the opinions of Carla Welker, M.S.W., and Dr.

Godschalx, Ph.D., or Dr. Duong, providers who treated plaintiff during periods when she was

not using Ativan or other substances, and that the ALJ ignored the opinions of Dr. Pazdernik and

Dr. Powell, both non-treating, examining doctors.

While clear and convincing reasons are required to reject an examining physician's

uncontradicted opinion, an ALJ need only provide specific and legitimate reasons, supported by

substantial evidence, to reject an examining physician's opinion that is contradicted by another

physician. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An ALJ may properly

disregard a medical opinion, even the opinion of an examining source, which is based on the

self-reporting of a properly discredited claimant. *Tonapetyan*, 242 F.3d at 1149.

Doctors Duong and Godschalx opined that plaintiff was disabled from work. These

opinions were contradicted by opinions from Dr. Powell, Joseph Pazdernik, Ph.D., and agency

psychologists Peter LeBray, Ph.D, and Dick Wimmers, Ph.D. Tr. 18-21, 292-94, 345-73, 421-23.

This court concludes that the ALJ set forth adequately specific and legitimate reasons for

rejecting the opinions of Drs. Duong and Godschalx. The ALJ explained that Dr. Duong's

August 2001 opinion concluding that plaintiff would be disabled and unable to work for two

months lacked any basis and addressed vocational issues in which the doctor had no expertise.

Tr. 21, 426.

The opinion of Dr. Godschalx and Ms. Welker in November 2002 was that plaintiff could

not work for at least a year. The ALJ acknowledged that plaintiff's condition might preclude

plaintiff from returning to her past employment, but the ALJ rejected these opinions to the extent

that they asserted that plaintiff could do no other work. This evaluation of the opinions and the

lack of vocational expertise on the part of Dr. Goldshalx and Ms. Welker is specific and

legitimate, supported by substantial evidence. Similarly, the ALJ's reliance upon the opinions of

examining psychologist Dr. Powell and agency reviewing psychologists Drs. LeBray and

Wimmer was appropriate, and these medical opinions were sufficient to constitute substantial

evidence that support the ALJ's conclusions and to establish that the ALJ weighed the medical

opinions presented in the record correctly.

12 - OPINION AND ORDER

Finally, as noted above, the other arguments presented by plaintiff in her Opening Brief pertaining to the ALJ's consideration of lay testimony and the scope of the ALJ's hypothetical question posed to the Vocational Expert are also without merit.

## CONCLUSION

Based on the foregoing, the findings of the Commissioner are based upon the correct legal standards and are supported by substantial evidence in the record.  The final decision of the Commissioner denying plaintiff Lisa Shambaugh's applications for DIB and SSI is AFFIRMED.

IT IS SO ORDERED.

DATED this   26     day of July, 2006.


     /s/Ancer L.Haggerty
      ANCER L. HAGGERTY
      United States District Judge

13 - OPINION AND ORDER